IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| McALLISTER TOWING AND : | |
| TRANSPORTATION COMPANY, INC. : | |
| : | CIVIL ACTION |
| And : | |
| : | |
| McALLISTER TOWING OF : | NO.  12-2208 |
| PHILADELPHIA, INC. : | |
| : | |
| Plaintiffs, : | |
| v. : | |
| : | |
| UNITED STATES OF AMERICA : | |
| : | |
| Defendant. : | |

MEMORANDUM

BUCKWALTER, S.J.                                                                                          January 8, 2013

Currently pending before the Court is the United States' Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction.  For the following reasons, the Motion is denied.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case is an indemnity action where Plaintiffs McAllister Towing and Transportation Company, Inc. and McAllister Towing of Philadelphia, Inc. (collectively "McAllister") seek to recover for payment they made to Todd Bruemmer from an injury he sustained during a shipping accident in October, 1999.  McAllister seeks to recover for this payment and the costs associated with it under a theory of contractual indemnity.

The facts of the case, as taken from the Complaint, are as follows.  At all relevant times,

the United States Navy was in a contractual arrangement with Owl International, d/b/a Global Associates (hereafter "Global") to safeguard and coordinate the movement of certain decommissioned Naval ships which had been removed from active service and were being stored at the Philadelphia Naval base. (Compl. ¶ 15.) As of September 15, 1996, McAllister entered into a subcontract with Global to provide tugboats to assist in the movement of various ships in the Naval shipyard. (Id. ¶ 16.) Global Associates has stated that it was not and is not a party to the Towing Contract, but was rather an "agent" in procuring towing contracts for its "disclosed principal," the United States. (Id. ¶ 17.) After each movement during the life of the contractual arrangement, McAllister would send Global an invoice for services. (Id. ¶ 18.) These invoices contained supplementary contract language, which Global accepted on behalf of itself and/or the United States. (Id. ¶ 19.) One of these additional terms contained in the contract was a "pilotage" clause. (Id. ¶ 20.) This pilotage clause stated that a McAllister licensed pilot or captain of a tug who assisted in the movement of another ship by coming onboard that ship would become a "borrowed servant." (Id. ¶¶ 21–22.) Any action taken by him would then cease to be the responsibility of McAllister and become the responsibility of the ship's owner. (Id. ¶ 21.)

Pursuant to these contracts, on October 10, 1999, McAllister was asked to assist in the movement of the USS GUADALCANAL from the Philadelphia Naval shipyard to James River at Hampton Roads, Virginia. (Id. ¶ 20.) McAllister sent two ships, the tugs IONA MCALLISTER and JAMES MCALLISTER, to assist a Naval tug, the USNS MOWHAWK, in moving the GUADALCANAL. (Id. ¶ 25, 30.) At all times, the MOWHAWK was under the control of Captain Garret E. Wanzor, an employee of the U.S. Navy. (Id. ¶ 26.) Docking Pilot

Charles E. Chamberlain, a McAllister employee, was aboard the GUADALCANAL and relayed orders from Wanzor to the IONA MCALLISTER and JAMES MCALLISTER.  (Id. ¶¶ 2, 31.)  As a result of excess strain on the MOWHAWK, the cable between the MOWHAWK and the GUADALCANAL broke and struck Todd Bruemmer, a civilian merchant seaman working aboard the MOWHAWK in the employ of the government.  (Id. ¶¶ 32–33.)  After the accident, the U.S. Navy conducted an investigation into the matter, which concluded that the accident was caused by a series of errors in judgment that "predominantly rest with Captain Wanzor."  (Id. ¶ 34.)

Mr. Bruemmer and his wife subsequently filed suit against McAllister and others to recover for his injuries.  (Id. ¶ 2.)  McAllister then filed a Third Party Complaint in the action against the United States and Global for tortious contribution and indemnity.  (Id. ¶ 3.)  The court in the prior litigation subsequently dismissed the claims against the United States as being barred by the Federal Employees Compensation Act, 5 U.S.C. § 8101 et seq.  In re McAllister Towing and Transp. Co., Inc.  No. Civ.A.02-858, 2004 WL 2009330, at *11 (E.D. Pa. Sept. 9, 2004).  McAllister eventually reached a settlement in the case and paid the Bruemmers $2,125,000 in exchange for a full release of their claims.  (Id. ¶ 7.)

McAllister filed the current suit on April 23, 2012, under the Contract Disputes Act[1], 41 U.S.C. § 7101 et seq., to recover from the United States the $2,125,000 payment to the Bruemmers, as well as $726,115.90 in costs accrued while defending against and settling the

---

[1] Although normally claims brought against the United States under the Contract Disputes Act must be brought in the Court of Federal Claims, maritime contracts are exempt from this provision and may be brought in federal district court.  See 41 U.S.C. § 7102(d); 46 U.S.C. § 30903; 28 U.S.C. § 1333.

3

Bruemmers' claims. The United States filed an Answer to the Complaint on June 26, 2012. The United States then subsequently filed the current Motion to Dismiss for Lack of Subject Matter Jurisdiction on October 18, 2012. McAllister filed a Response in Opposition on November 30, 2012, and the United States filed a Reply Brief on December 14, 2012. The Court now considers the merits of the Motion.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case. Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). If the complaint is deficient as pled, the court should grant leave to amend before dismissing it with prejudice. Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). The motion should only be granted if it appears with certainty that assertion of jurisdiction would be improper. Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000).

The second form of a Rule 12(b)(1) motion is a "factual" attack, which argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue thereby causing the case to fall outside the court's jurisdiction. Mortensen, 549 F.2d at 891. In such a case, the court must evaluate the merits of the disputed allegations because "the

trial court's . . . very power to hear the case" is at issue.  Id.; Carpet Grp., 227 F.3d at 69.

### III.  DISCUSSION

The United States seeks to dismiss McAllister's claim by arguing there was never a contract between the two and, absent a contract, there can be no waiver of the United States' sovereign immunity.

It remains well settled that the United States enjoys sovereign immunity from suits and, accordingly, may be sued only if it has waived that immunity.  Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 93–94 (3d Cir. 1995).  "[W]aivers of federal sovereign immunity must be 'unequivocally expressed'" in the statutory text and "'[a]ny such waiver must be strictly construed in favor of the United States.'"  United States v. Idaho ex rel. Director, Idaho Dep't. of Water Res., 508 U.S. 1, 7 (1993) (quotations omitted).  A plaintiff may bring a case for breach of a marine contract against the United States pursuant to the Contract Disputes Act, 41 U.S.C. § 7101 et seq. ("CDA"), if he has first presented a claim to the appropriate contracting officer.  See Ace Am. Ins. Co. v. Fujifilm Smart Surfaces, LLC, No. Civ.A.11-3435, 2011 U.S. Dist. LEXIS 138112, at *6–7 (E.D. Pa. Dec. 1, 2011); Dalton v. Southwest Marine, Inc., 120 F.3d 1249, 1251 (Fed. Cir. 1997).

In order to contractually obligate the United States government, an authorized agent must have actual authority to do so.  Strickland v. United States, 382 F. Supp. 2d 1334, 1344 (M.D. Fla. 2005), (citing D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003)).  This authority may be either expressed or implied.  Fifth Third Bank of W. Ohio v. United States, 402 F.3d 1221, 1235 (Fed. Cir. 2005).  Such authority is express where  the Constitution, a federal statute, or a federal regulation grants it in clear and unequivocal terms.  Strickland, 382 F. Supp.

2d at 1344. Authority may be implied where such authority is an integral part of an agent's assigned duties. Id. "Contracting authority is integral to a government employee's duties when the government employee could not perform his or her assigned tasks without such authority and the relevant agency regulation does not grant such authority to other agency employees." Leonardo v. United States, 63 Fed. Cl. 552, 557 (Fed. Cl. 2005)(quotations omitted).

Alternatively, even where an unauthorized agent contracts on behalf of the government, the contract may still be considered valid if a government agent with authority subsequently ratifies it. Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998). "To recover under a ratification theory, a plaintiff must prove that the agent: (1) fully knew the material facts surrounding the unauthorized agreement; and (2) knowingly confirmed, adopted, or acquiesced to the unauthorized agreement." Strickland, 382 F. Supp. 2d. at 1344 (citing Harbert/Lummus, 142 F.3d at 1429; Schism v. United States, 316 F.3d 1259, 1289 (Fed. Cir. 2002)).

In this case, McAllister argues that discovery must be allowed to proceed to determine whether or not the contract—even if unauthorized—was later ratified by an authorized agent. This is a reasonable request. Though the United States asserts in its briefing that no such ratification took place, McAllister's stated need to fully investigate the contractual relationship is a valid one.

The United States is correct to point out that the Court would be obligated to dismiss the case if we were considering a factual attack of Plaintiff's claim, as there has been no definitive evidence of the existence of a contract. However, by the same token, there has been no definitive evidence which shows that the subcontract between Global and McAllister was never ratified.

As a result, the attack on the Complaint is only facial, and Plaintiff's allegations are entitled to deference.

**IV.    CONCLUSION**

In light of the foregoing, the United States' Motion to Dismiss is denied. Because an issue remains as to whether or not the subcontract between Global and McAllister was ratified by the United States, McAllister must be allowed to continue to conduct discovery.[2]

An appropriate Order follows.

---

[2] By noting the need for discovery on this particular issue, the Court does not mean to confine discovery to this subject area.